IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DUSTIN MCNEAL,** <br><br> **PLAINTIFF,** <br><br> VS. <br><br> **PHH MORTGAGE CORPORATION,** <br><br> **DEFENDANT.** | **Case No.:** <br><br> **JURY TRIAL REQUESTED** |

## COMPLAINT

**COME NOW** Dustin McNeal and, as his Complaint against Defendant PHH Mortgage Corporation ("PHH") states as follows:

### JURISDICTION AND VENUE

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 12 U.S.C. § 2614 and 12 U.S.C. § 1367.

Venue is proper here pursuant to 28 U.S.C. § 1391, because the events giving rise to Plaintiff's cause of action occurred in this District.

### PRELIMINARY STATEMENT

This action arises from PHH wrongful management of Plaintiff's home mortgage loan. PHH, the current servicer of the loan, failed to make timely payments to Plaintiff's homeowner's insurance company out of the mortgage escrow account. As a result, the existing policy was cancelled and coverage lapsed. This lapse caused the cost of insurance to sky-rocket and the caused Plaintiff to be considered "high risk" for future underwriters. Because of the increased costs, Plaintiff's mortgage payment has substantially increased.

Plaintiff provided a written notice of servicing error to PHH pursuant to the procedures set out in the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2605 ("RESPA") and its implementing regulations. PHH failed to correct its servicing errors after receipt of Plaintiff's written disputes. PHH failed to conduct any reasonable investigation and failed to make corrections as required by RESPA.

Plaintiff asserts a claim against PHH for violations of RESPA. Plaintiff seeks statutory and actual damages, including damages for mental anguish and emotional distress, and punitive damages, plus attorneys' fees and costs.

## PARTIES

1.  At all relative times, Plaintiff was a natural person and resident of Autauga County, Alabama.

2.  Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services ("PHH") is a corporation formed under the laws of the State of New Jersey, with its principal place of business in New Jersey.

3.  PHH is a "mortgage servicer" as defined by 12 U.S.C. § 2605(i)(2). At all relevant times, it acted as servicing for the lender with respect to Plaintiff's mortgage.

## FACTUAL ALLEGATIONS

4.  At all relevant times, Plaintiff was an adult resident of Autauga County, Alabama. He lived with his wife Kaytlin in the home they purchased located at 703 Lower Kingston Road, in Prattville, Alabama ("the Property"). In September 2024 they relocated to Tennessee and placed the Property on the market for sale.

5.  Plaintiff purchased the Property on September 30, 2022, with a mortgage loan from Hancock Whitney Bank. The amount of the mortgage loan is $155,200 and the annual percentage

rate is 6.5%, for a term of 30 years. The required monthly principal and interest payments are $980.97. This was the McNeals' first purchased home.

6. The mortgage requires the lender to apply each payment received to escrow, interest, and principal.

7. The mortgage also requires the borrower to maintain homeowner's insurance on the Property and requires that the insurance premiums and property taxes be paid through an escrow maintained by the lender. PHH managed all aspects of the escrow account, including payments, on the lender's behalf.

8. When Plaintiff closed on his home, he purchased a homeowner's policy of insurance with Travelers, effective September 28, 2022. This was an annual policy with a renewal date of September 28, 2023.

9. The Travelers premium at the time was $1,673.00 and was paid by the lender, Whitney Hancock Bank.

10. On or around October 11, 2022, PHH obtained the servicing rights of the Plaintiff's mortgage loan.

11. While it serviced the loan, PHH collected for escrow the amounts they expected to pay for the renewal of the Travelers insurance policy. The monthly payments, including escrow were $1,231.09. As of January 2023, there was a positive balance in the Plaintiff's escrow account of $1,0017.80.

12. In October 2022, Plaintiff received a letter from Travelers notifying him that the total premium for the 2022-2023 policy would be $1,935, which was $262 higher than the amount collected at the closing. The letter made clear that it was not a bill and that his mortgage company would be billed separately for the $262 adjustment. Upon information and belief, Travelers

notified PHH of the increase.

13. At all relevant times, there were funds in the escrow account sufficient to pay the $262 adjustment. However, PHH failed to timely pay the $262 and that failure ultimately caused the policy to lapse on January 9, 2023.

14. Prior to the lapse, Travelers provided notice to PHH of the required $262 and notice that the policy would be cancelled if no payment was received. Travelers also notified PHH the policy would be reinstated if payment was received by January 29, 2023, but PHH failed to make the payment.

15. In January 2023, there was more than enough funds in Plaintiff's escrow account to pay the $262.00 insurance increase.

16. After Plaintiff received the notice of the January 9th cancellation, he immediately contacted PHH. He was directed by the PHH representative to visit a website called "mycoverageinfo.com" where it showed the policy was in "good standing" and the $262.00 check that was mailed on January 18, 2023. The $262 was deducted from Plaintiff's escrow account. This information indicated that payment was provided well within the reinstatement period and nothing on the website indicated to the Plaintiff that the Travelers policy had lapsed.

17. It was not until August of 2023 that Plaintiff learned after a call to Travelers that PHH failed to issue a replacement draft and the Travelers policy had lapsed. Upon review of his statements and escrow account, Plaintiff uncovered a refund issued to his escrow account in June of 2023 in the amount of $262.00.

18. In September 2023, Plaintiff also uncovered that the website PHH directed him to, mycoverageinfo.com, still reflected the $262.00 payment as being applied to his account and the Travelers policy still active, although by this time it had actually lapsed.

4

19. After inquiry, Plaintiff discovered that PHH's check to Travelers for $262.00 sent on January 18th could not be negotiated because it was "damaged upon receipt." Plaintiff also later learned that PHH received notice of the damaged check and was provided an opportunity to send a replacement check but failed to timely do so.

20. This lapse in coverage reflected negatively on the Plaintiff, placing him in a "high risk" category to insurance companies nationwide. Plaintiff sought replacement quotes for the same coverage at a much higher premium than he had with the Travelers policy. Plaintiff was able to obtain replacement insurance with Safeco for a premium of $2,929. Plaintiff paid this premium in full out of pocket.

21. By September 2023, PHH informed Plaintiff that his escrow had a surplus of $268.13 and they issued an overage refund in that amount to him.

22. By letter dated October 30, 2023, Plaintiff received a request for insurance information from PHH, or an estimated lender-paced insurance policy in the amount of $3,615.00 would be placed on the Property.

23. Plaintiff provided PHH with the Safco policy information on or around October 31, 2023, and on November 1, 2023, PHH proceeded to issue payment to Safeco, in an incorrect amount of $2,854.00, despite Plaintiff already paying the Safco policy out of pocket.

24. Plaintiff was then issued a refund check from Safeco for the overpayment.

25. In January of 2024, PHH notified Plaintiff that his escrow account had a $2,399.52 *shortage*, and that his monthly loan payments would increase from $1,231.09 to $1,415.31.

26. On March 1, 2024, Plaintiff began paying the inflated monthly payment of $1,415.31 and continues to do so to present date.

27. On April 12, 2024 Plaintiff submitted a complaint with the Consumer Finance

Protection Bureau ("CFPB").

28. On May 30, 2024, Plaintiff provided a written notice of the servicing error to PHH pursuant to the procedures set out in the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2605 ("RESPA") and its implementing regulations. The letter described PHH's failure to make timely insurance payments causing an insurance lapse, as well as other mistakes made by PHH, and asked that the account be corrected. A copy of the May 30th letter is attached hereto as Exhibit 1.

29. The May 30th letter constitutes a Notice of Servicing Error ("NOE") within the meaning of 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35. The letter was mailed to the addresses designated by Defendant for receipt of notices of servicing error.

30. Any reasonable investigation would have revealed that the lapse in Travelers policy was due to the failure of PHH to issue proper payment, which is a servicing error.

31. By letter dated June 18, 2024, PHH responded to the May 30th NOE by stating without explanation that "[b]ased on our review, we have determined that no error occurred."

32. PHH's June 18th NOE response also referenced prior inquiries and its prior response to the inquiries. PHH's apparent position was that it was not required to respond to Plaintiff's May 30th NOE because of its prior response to Plaintiff's earlier inquiries. But the "inquiry" referred to in the NOE response is the consumer complaint Plaintiff previously made to the CFPB. There was no earlier notice of servicing error. While RESPA does not require a mortgage servicers to respond to repeated and duplicate NOEs, it does not excuse a servicer from its obligation to respond to an NOE merely because it previously responded to a CFPB complaint, which does not trigger any duties to the borrower under RESPA. The May 30th NOE was Plaintiff's first NOE provided under RESPA and PHH had a duty to fully respond and to make all appropriate

corrections.

33. In September 2024, Plaintiff and his wife relocated to Tennessee for a job transfer. The Property was placed on the market for sale but has not sold as of the date of the filing of this Complaint. Due to the inflated payments and the mismanagement of the mortgage, Plaintiff does not anticipate making a profit from the sale of the Property.

34. Plaintiff has suffered and continues to suffer actual damages and injury-in-fact as a result of Defendants' statutory violations and other wrongful acts. The damages suffered include, but are not limited to, the following: increased insurance and mortgage charges, increased monthly mortgage payments, decreased return on expected sale of the home and mental anguish and emotional distress stemming from a real and justifiable fear of losing his home and equity.

35. The harm suffered by the Plaintiff as a result of Defendants' wrongful acts and omissions bear a close relationship with the types of harm for which the law has traditionally allowed redress under common law claims for breach of mortgage, accounting, fraud, suppression, wrongful foreclosure, invasion of privacy, wanton collections, negligence and willfulness.

## COUNT I
### (RESPA VIOLATIONS BY PHH)

36. The allegations stated in Paragraphs 1 through 36 above are incorporated as if fully asserted herein.

37. Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA."), 12 U.S.C. § 2605(e), and its implementing regulations grant borrowers the right to submit a "Notice of Servicing Error" ("NOE"), identifying perceived errors committed by the servicer. 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

38. A NOE must sufficiently identify the borrower, the account and the perceived servicing error. Id.

39. RESPA requires specific actions be taken by the servicer upon receipt of an NOE, including a reasonable investigation of the error. The servicer is also required to make all "appropriate corrections" to the account which a reasonable investigation would reveal. This would include the correction of all servicing errors, even those not described in the NOE. RESPA also requires the servicer to suspend all derogatory credit reporting while it investigates the errors set out in the NOE.

40. A servicer which fails to conduct a reasonable investigation and fails to "make appropriate corrections in the account of the borrower" after receipt of an NOE violates RESPA Section 2605(e), without respect to any regulation promulgated under the statute. 12 U.S.C. § 2605(e)(2).

41. A servicer which fails "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties" violates Section 2605(k)(1)(C). This is a separate violation of RESPA, without respect to any regulation. 12 U.S.C. § 2605(k)(1)(C).

42. A servicer also violates RESPA when it fails to comply with regulations promulgated by the Bureau of Consumer Financial Protection, including the regulations concerning the servicer's duties upon receipt of an NOE. This is a separate RESPA violation. 12 U.S.C. § 2605(k)(1)(E).

43. Plaintiff's mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

44. PHH is a "servicer" with respect to Plaintiff's loan as that term is defined in 12 U.S.C. § 2605(i)(2).

45. Plaintiff's May 30, 2024, letter constitutes a NOE within the meaning of 12 U.S.C. § 2605(e).  PHH was required to reasonably investigate the errors identified in the letter, make all appropriate corrections, and provide the information and documents requested.

46. Any reasonable investigation of the errors identified in Plaintiff's NOE would have revealed that errors were made and that appropriate corrections were required.  Specifically, PHH knew or should have known that it failed to make timely payments to the homeowner's insurance policy, causing a cancellation to the Travelers policy and lapse in coverage. PHH nevertheless failed to timely make any corrections.  PHH failed to conduct any reasonable investigation and it failed to correct the errors identified in that letter and errors which would have been detected by any reasonable investigation.

47. PHH violated RESPA Section 2605(e) by failing to respond to Plaintiff's NOE as required by RESPA and its implementing regulations.  PHH also failed to conduct a reasonable investigation and failed to "make appropriate corrections in the account of the borrower" after receipt of Plaintiff's NOE. This is a violation of RESPA without respect to any regulation promulgated under the statute. 12 U.S.C. § 2605(e)(2).  It is also a violation of RESPA as implemented by regulations promulgated by the CFPB.

48. PHH also violated RESPA Section 2605(k)(1)(C) by failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."  This is a separate violation of RESPA, without respect to any regulation.  12 U.S.C. § 2605(k)(1)(C).  It is also a violation of RESPA as implemented by regulations promulgated by the CFPB.

49. PHH violated RESPA Section 2605(k)(1)(E) by failing to comply with regulations promulgated by the Bureau of Consumer Financial Protection, including the regulations concerning their duties upon receipt of an NOE as specified in those regulations. This is a separate RESPA violation and failing to comply with the regulations is a violation of the statute itself. 12 U.S.C. § 2605(k)(1)(E). It is also a violation of RESPA as implemented by regulations promulgated by the CFPB.

50. Plaintiff has suffered actual damages as a proximate result of PHH's RESPA violations, including mental anguish and emotional distress.

51. PHH has engaged in a pattern and practice of acts and omissions which violate Section 2605(e), including its repeated violations with respect to Plaintiff, sufficient to allow recovery of statutory damages under Section 2605(f). This pattern and practice also include the failure to property respond to NOEs, failure to conduct reasonable and adequate investigations of servicing errors described in NOEs, and the failure to make corrections which any reasonable investigation would reveal are necessary and appropriate with respect to other borrowers.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against PHH for each violation of RESPA, awarding the following relief:

   a. Statutory and actual damages as provided in 12 U.S.C. § 2605(f);

   b. Reasonable attorney's fees, and costs expended in this proceeding; and

   c. Such other and further relief as the Court may deem just and proper.

**TRIAL BY JURY IS DEMANDED**

/s/ Kenneth J. Riemer
_____
KENNETH J. RIEMER (RIEMK8712)
RIEMER LAW, LLC
*Attorney for Plaintiff*
2153 Airport Boulevard
Mobile, AL  36606
Telephone: (251) 432-9212
E-mail: KJR@Riemer-Law.com


**DEFENDANTS ARE TO BE SERVED BY CERTIFIED MAIL AT THE FOLLOWING ADDRESSES:**

PHH Mortgage Corporation
c/o Corporation Service Company, Inc.– Registered Agent
641 South Lawrence Street
Montgomery, AL 36104

11


EXHIBIT 1

Dustin McNeal
703 Lower Kingston Road
Prattville, Alabama 36067

May 30, 2024

**SENT VIA CERTIFIED MAIL**
PHH Mortgage Services
P O Box 66002
Lawrenceville, NJ 08648

RE:    **QUALIFIED WRITTEN REQUEST AND NOTICE OF SERVICING ERROR**
         Borrower:              Dustin McNeal
         Loan No.:              [redacted]
         Property Address:    703 Lower Kingston Road, Prattville, Alabama 36067

Dear Sir or Madam:

I am writing to request information about my mortgage loan which is being serviced by your company.

I believe you have made a mistake in servicing my loan and have failed to make timely insurance payments out of my escrow. This caused a lapse and has caused my insurance premiums to significantly increase. I also believe you have incorrectly calculated amounts due for escrow and you have wrongly increased my monthly payments.

In October 2022 you were notified that the premium for the Travelers policy then in place would increase by $262. The notice explained that you would be billed separately for the additional premium and that no payment was needed from me directly.

I assumed that the increased premium would be paid out of my escrow as required. But then I received a notice from Traveler dated January 9, 2023 stating that my policy would be cancelled for nonpayment effective January 29th if payment wasn't made. That notice was also sent to PHH mortgage. (A copy of that notice is attached).

It is my understanding that you overnighted a check to cover the insurance premium on 1/18/2023. I checked my portal on "mycoverageinfo.com," and it showed the policy as in good standing and confirmed that the $262 payment was mailed 1/18/2023. It also showed "policy active" with the updated coverage premium amount. But this the information was not correct. I discovered much later that the Travelers policy was not active. It was cancelled for non-payment. The policy lapsed because the check you initially sent was not negotiable. Travelers requested a replacement check, but you failed to send a replacement check.

You did not notify me of any problems with the payment. In fact, you continued to provide false information through my portal, falsely stating that the insurance was active when it had lapsed for non-payment.

June 6, 2023, you inexplicably refunded $262 to my escrow account. I received no explanation of the escrow refund and no one at PHH told me anything about a potential lapse in coverage due to the damage check. I did not realize this at that time (because I was relying on the information stated on my portal), but I now believe that refund was the additional payment that

May 30, 2024
PHH Mortgage Services

you were supposed to send to Travelers. That should have been paid to Travelers – not refunded back to me.

On <u>August 7th 2023</u>, while researching unrelated insurance issues, I logged on to my insurance portal which still indicated an active Traveler's policy from September 23, 2022, to September 23, 2023, for Travelers Insurance. And it falsely showed a payment from my escrow account to Travelers for the $262 for the premium increase back in January.

However, soon after that I was informed by Travelers that in fact you had not paid the $262 required additional premium. The first check from PHH was non-negotiable. Travelers notified you of the problem and requested a replacement check, but you failed to provide a replacement check. Instead, you apparently refunded the premium back to me. Of course, by then the policy had lapsed. That lapse lasted over seven months.

The lapse in coverage caused by your failure to provide good funds to Travelers has resulted in my property and myself being deemed "high risk." This has significantly increased the premiums I pay.

I faced and will continue to face increased premiums because of your mistake.

After I finally realized the Travelers' policy had lapsed, I searched for a replacement policy. I realized that I was considered "high risk" and the quotes I received were around twice the amount I was paying. The lowest premium I found was $3969 for a Safeco policy. I was able to get a discount for a lump sum payment and purchased the Safeco policy for $2,920, which I paid directly. That policy was placed in August 2023, and you were notified that I had coverage through Safeco. It renews August 10, 2024.

As of September 5, 2023, my insurance portal still showed an active Travelers policy and falsely states that a payment of $262 was made on January 19, 2023.

In late September I began receiving letters from PHH falsely stating that my insurance was lapsed, even though the Safeco policy was in place, and you knew it was in place.

Your letters demanded proof of insurance and threatened me with force-placed insurance. In response I sent you the information regarding the Safeco policy (which I believe you already had). It is my understanding that you paid Safeco the premium out of my escrow, even though I had already paid the policy. At the time you paid Safeco, there was a positive balance in my escrow, and I believe there were sufficient funds to pay the Safeco premium.

In fact, on September 29, 2023, you informed me that my escrow account had a surplus. I now believe that is because you had allowed the Travelers policy to lapse, even though your system continued to show the Travelers policy as active.

In any event, despite the sufficient funds available to pay Safeco, you notified me in January 2024 that there was an escrow shortage of $2399.52 and, therefore, your increased my monthly mortgage payment increased to $1415.31. This is another error on your part. There should not be a shortage in that amount, if at all. There were sufficient funds in my escrow to pay the Safeco premium.

2

May 30, 2024
PHH Mortgage Services

Please investigate these matters and correct my account. That would necessarily mean correcting my monthly payment and reimbursing me for the increased past and future premiums caused by your failure to timely pay premiums out of my escrow.

In addition, I request the following information relating to my loan:

1. A complete payment and transaction history for this loan, including all entries of any nature in the form of a debit, a credit, a transfer or otherwise;

2. Complete accounting of all monies paid into and out of my escrow account since the beginning of the loan;

3. Detailed payoff statement;

4. Statement of the reasons why you did not provide a replacement check to Travelers as requested;

5. Detailed explanation of why you considered my escrow account short as of January 24, 2024; and

6. Identify the current holder of my mortgage.

Sincerely,

Dustin McNeal

Enclosure:
Travelers Notice of Cancellation dated January 9, 2023 (1 page)

3

**NOTICE OF CANCELLATION**
**FOR NON-PAYMENT OF PREMIUM**

Homeowners
LOAN NUMBER: ███████

POLICY NO. 612719978 633 1
Issue Date   01/09/23
Page 2 of 2

Insurer   TRAVELERS PERSONAL INSURANCE COMPANY

Named Insured and Mailing Address
DUSTIN H MCNEAL
703 LOWER KINGSTON RD
PRATTVILLE AL 36067-2922

Agent  TRAVELERS BUSINESS CENTER

010

For policy changes or questions
call: 1-877-490-4454
For claims call: 1-800-252-4633

**EFFECTIVE DATE OF CANCELLATION:   JANUARY 29, 2023**

We have not received the payment due on this policy. Therefore, your policy is cancelled on the effective date of cancellation shown above, and at the time the policy became effective.

We will reinstate your policy if we receive your payment for at least the MINIMUM DUE by the DUE DATE on this notice. In that event, we will send you a notice of reinstatement. If you pay less than the MINIMUM DUE or send a payment after the DUE DATE, we will deposit your payment, retain any premium due us and send you a refund, if necessary. However, your policy will remain cancelled with no additional notice to you.

### PREMIUM INFORMATION

| POLICY NUMBER 612719978 633 1 | | POLICY PERIOD 09/28/22 to 09/28/23 | |
|---|---|---|---|
| Previous balance | $262.00 | | |
| | | MINIMUM DUE | $262.00 |
| Pay Either Amount | | TOTAL DUE | $262.00 |
| By | | DUE DATE | JANUARY 29, 2023 |

*DUPLICATE COPY*

Please detach and mail the lower portion of this bill with your payment in the enclosed envelope to TRAVELERS, PO BOX 660307, DALLAS, TX 75266-0307. Thank you.

**Make checks payable to Travelers Indemnity and affiliates.**

010
0M4555

TRAVELERS BUSINESS CENTER
DUSTIN H MCNEAL
612719978 633 1

Please do not staple your payment to this stub.

C

TRAVELERS PERSONAL INSURANCE
PO BOX 660307
DALLAS, TX 75266-0307

| AMOUNT ENCLOSED | |
|---|---|
| MINIMUM DUE | $262.00 |
| TOTAL DUE | $262.00 |
| DUE DATE | JANUARY 29, 2023 |

0036313237313793738403633331390000262000002620035